The next case for argument is 14-7072 O'Hara v. McDonald Good morning, Your Honors. Mark Whitman, appearing for O'Hara v. McDonald This case simmers down to one basic question, and that is, did the Board and the Veterans have a particularity standard for evaluating the probative evidence of medical treatise evidence? The record, in every respect, shows that it did. If you look closely at the BVA decision on the Joint Appendix 22-23, if you look at the Board hearing, which involved the same judge who wrote the Board opinion, it's clear on the record, page 76, that that was the test he was using. And if you look on the record, page 5, the Court opinion makes it clear that that's all. The government would have you believe that somewhere lurking in the background is another inferred finding that isn't expressed. And not only is that inconsistent with the plain language of everything that's in the record, but it's a dangerous proposition because where do you end? In other words, if you're going to infer that, you can infer anything. And so I just don't think that that argument has any legs and is kind of a ridiculous proposition if taken to its logical conclusion. The Board did ultimately say, or they concluded, that the medical article had no significant probative value. And we can, I guess, debate it, but there's a suggestion there that they were weighing the probative value. But under what test, though? I mean, when you say it doesn't have probative value, what is the analytical tool they're using to make that assessment? And there lies the legal argument. If they're saying it has no probative value because this particular treatise doesn't discuss the particular case, the veteran's case, that's a flawed legal analysis. No significant probative value. What does that word there inject into the inquiry? Well, I guess we could get into semantics, but what test, I mean, how do you evaluate whether it has a lot, a little, somewhere in between? See, I mean, it's a conclusion. You have to do some kind of weighing, I guess, before you… Right, but what do you weigh? In other words, if the court, well, the court can turn to page 76 of the record. And again, this is the judge, same judge who wrote the Board opinion. If you look in the middle, a large paragraph, he goes, this is the judge saying, let me just explain. Medical evidence that consists of treatises or medical texts can support a claim as far as the nexus to the extent that it applies specifically to your case. So if there isn't an opinion, he's referring in the treatise, that says that in your case, even if aspirin is known to cause, in some cases, kidney disease, we'd have to have a medical opinion. So he's saying that, look, this treatise does not have probative value unless it has, it refers specifically to this case, which no treatise ever does. It's a generic piece of evidence. Or you have to run out and get an independent medical opinion. So it all means that it doesn't have probative value, whether you were insignificant, none, somewhere in between, if you're talking about literally your case, or was he talking about literally your type of symptoms? Well, let's look at page 22 and 23 of the record. This is the BVA decision that the same judge, the presider of the hearing, wrote. Now, if we look at the bottom, the last paragraph, it goes, In support of his claim, the veteran has submitted information he obtained from the internet research regarding modularity of sponge kidney, toxicity of acetaminophen, and kidney damage due to overexposure to mixtures of medications. The court has held that a medical article or treatise can provide support to a claim, but must be combined with an opinion of a medical professional and be reflected of the discussion of generic relationships. Here, the internet research medical evidence submitted by the veteran is general in nature, does not specifically discuss his underlying, his kidney and urinary tract disorders, and is not accompanied by a medical opinion by a professional. I really just can't see how you can read it any other way. I mean, the emphasis, it's just this idea of somewhere looking as an inferred binding shows a lot of imagination on the government's part, but just isn't supported by the record. And I wanted to point out something else, which I didn't in the brief, and I think it's important, so I want to emphasize it. That treatise evidence was probative for two reasons. And those reasons are, one, and let me back up and explain. Apologize. On page 106, I believe. Yes, on page 106. I suggested in a footnote that the treatise was consistent with the independent medical exam or the C&P exam, but that's true a little bit. But primarily, there's a big disagreement, and that's probative for this case. Now, here's the document, page 106, the bottom of the last full paragraph. And I'm going to read. It's hopefully evolved. In review of all the documents available to this examiner, the veteran states he has been allergic to codeine, but has used Percocet in the past, as well as Vicodin. And in the service treatment record, there's an indication that he used aspirin, as well as Flexerol, Robaxin as muscle relaxants for his low back. He does not recall ever using non-steroidal anti-inflammatories, or NSAIDs. When I refer to NSAIDs, it's an acronym for non-steroid anti-inflammatories. The importance of that is that he considers aspirin not an NSAID. That's what he's basing his opinion on, that NSAID does not include aspirin. Now, if you look on page 114 and 115, this is the treatise evidence that the veteran submitted. And it goes, analgesic nephropathy involves damage with the internal structures of the kidney. I appreciate it, and we've got the record in front of us. The problem is, we're getting close to crossing the line, as you know, because we have a strict and tight jurisdictional barrier. And so, if we're talking about the board used the right standard, but you don't like the way it was applied because you think the facts in the articles were sufficient so that this wasn't generic, then, as you know, we're not properly here. So, why don't we avoid that and talk really about the legal issue? Okay. I just use that as a thing. You're right, Rhonda. That is the legal issue, and we don't go into the facts. The only thing I would say is that there couldn't be an issue of harmless error, which the government would have to use, could not ask. So, getting back to it, I mean, the board said some stuff about the medical view, and then they said other stuff about the probative value. And the Court of Veterans Claim here said the board properly discounted probative value of the treatise based on the fact that nothing in these facts and circumstances of his claim. That's the case particularity standard. That's why I feel it's wrong. In other words, they're saying there's nothing in the treatise based on what the board did was rejected the probative value or found it was insignificant because the treatise did not refer to the specific facts. But you used a different word, and I think it's significant. You said rejected, and what the CAVC said was that they properly discounted its probative value. But is there really a difference? In other words, if they're using the wrong analytical tool to evaluate the probative value of the evidence, whether they reject it or give it little weight, it's still wrong, right? I don't know. Well, I think there is a big difference between saying something has no probative value and then saying, considering all the facts and circumstances, we gave it little probative value. Well, yes and no. In other words, it goes further. I mean, it's a similar – once more, it was a stronger statement. But it's the same idea of how do you evaluate the probative value of evidence? Because they're not saying there's a legal barrier or there's any kind of barrier. We're just not looking at this. They're saying, okay, we looked at this, but since it has little or no applicability that we can see to the facts or the nature of his claim, we're going to discount the probative value. Yeah, but it's a catch-22. The medical treat never does. In other words, it's already – what I'm saying, out of the gate, it's going to lack significant probative value. It can never, ever, ever be on its own really probative or strong probative evidence. That's what it's saying, right? It's saying treatises, we accept the definition of a treatise. It's something that talks generically about concepts. And that's true not only in medicine but in everything. A treatise, by definition, is an extrapolation of particular cases and coming up with general principles. And so if you're saying, well, it's insignificant or I'm going to reject it outright because I don't see any word about your case, that's got to be wrong. What about the secondary point that the board made is that not only do you have to have it specifically relate to your case, but you have to have a medical opinion endorsing it separate and apart from the treatise itself. And that's the wrong law too because in the Federal Circuit in Hensley v. West made it clear that in certain cases, you don't need independent probative value. And if you look at 3.519, it endorses the use in the regulatory history, endorses the use of treatise evidence. So what you're doing is you're giving – you're controlling by labels, and you're effectively gutting the regulation in Hensley. What's the definition of a treatise? Well, that's a good – well, I gave you my best definition. Well, I understand that. I guess what I'm trying to find out is whether these internet articles would even qualify as a treatise in the first instance. Well, that's a good question, but that was an article below. It wasn't a basis. In other words, you'd have to look down below and say, well, is this something that the community would endorse? I mean, that's a factual question as to whether or not it's a sufficient – interesting question. I would tend to say that based on the claimant-friendly system, that it's a very generous definition because the whole point – if you look at the regulatory history, they're saying that you can find a lot of articles online trying to make it easy for veterans to try to prove their case because to get independent medical opinion, it costs somewhere between $1,000 and $1,500, which they don't have. So, again – Yeah, but if that's the system you contemplate, that everybody's going to go on the internet. You're going to download 15,000 articles written by who knows who, and then the board is probably going to do what it did here, or the CABC would just say, we're going to discount that, and that's – But why? You're saying they're not allowed to do that, that there's something improper about discounting this. No. I'm saying they're perfectly fine discounting it. There's no basis for it. There's no doctor. There's no credentials. How do you – I mean, how do you evaluate anything? You have to look at its source, the authority, how well it explains itself. But to say you lose right out of the box because it's a treatise, no matter how good it is. I mean, what they're saying here is suppose you had an expert, several experts on this. They put all their names down. It was a beautifully written opinion. The facts were very analogous to this case. It didn't refer to the specifics of this case, but were closely analogous. Are we saying it's going to have an insignificant component of value because it's a treatise? I mean, that's what they're saying. All right. Why don't we save your rebuttal and let him go. Thank you. Thank you, Your Honor. I'm just going to leave the court. Mr. Lipman said one thing I want to pick up on because I think the government and Mr. O'Hare do agree on what the central issue of this case is. As Mr. Lipman said, it's what analytical test was applied here by the board and then specifically by the Veterans Court in affirming the board's decision. It's not clearly erroneous as to why there was no significant probative value given to these Internet articles. But didn't the board actually say it gets no probative value? It didn't say no significant probative value. I mean, I was playing devil's advocate there before, but it actually says it has no probative value. Well, it did specifically say it has no significant probative value, and I think, Your Honor, particularly read and liked that entire decision where on page 22 of the Joint Appendix, the board spent a significant and thorough amount of time going through the medical evidence that was on the record, specifically this medical examination that Mr. O'Hare had received expressly for the purpose of determining whether there was a nexus between his prior service-connected disability and these kidney conditions. Then after that, it went into its discussion of these Internet articles. But what are we supposed to do with the fact that the regulation says treatises are valid and probative evidence, whether they're sufficiently probative is a different question, and that there's nothing in the regulation that says in order for a treatise to even be considered, you need a separate medical professional endorsing the treatise. I mean, I know that's how we try cases, but that's not what this veteran-friendly system says. Yes, Your Honor, and I think that one very important point on that is that the regulation in question, 3.159, is specifically titled, I think, Duty, Assistance in Developing Claims, and the other regulation, 66FR45620-01, is entitled Duty to Assist. As well, just about this entire line of cases, Hensley v. West and the Veterans Court cases that it cites, all of these are in a very different context than what we're dealing here, which I think is very important for this Court to consider, because what that regulation and those cases are, the factual scenario there is the case where a veteran comes in in the first instance and is trying to clear the immediate hurdle and very low hurdle of triggering the VA's duty to assist. And specifically, what generally the duty to assist entails is a duty to provide the veteran with a medical examination as to the condition and as to the nexus. And so when we're talking about that regulation, what we're talking about how the VA has to weigh treatise evidence in that instance is whether or not it has a duty to assist, and specifically whether or not it has a duty to provide a medical examination of precisely the type of examination. So I'm getting a little confused. Does the government believe that a medical article, a medical treatise that is submitted by a veteran has to be combined with an opinion of a doctor in order for it to be considered by the board? Or can the veteran just simply supply a medical treatise or article that it believes is reflective of his personal condition and have that considered by the board? Your Honor, I want to make sure I understand your question. You're talking about in the ultimate determination of whether there's a nexus and a service connection, correct? Right. I'm talking about the facts of this case. I think the other side has an argument that the board dismissed the medical article, the internet article that he submitted, solely because it wasn't combined with a doctor's opinion. Well, Your Honor, if that is the correct reading of the board's opinion, then what's the government's position on that? Well, Your Honor, certainly we would refute that because I think the board very specifically gave two different reasons why. Is that a correct understanding of the law? That it must be accompanied by an accompanying physician? No, not as an absolute matter, Your Honor. So if any board opinion said that, then that would be legal error? Well, it would be an incorrect statement of the law, and I do think it's important in this case. It would be an illegitimate grounds to dismiss the evidence. If it was solely on that basis, if there was a per se rule that because this was not accompanied by a contemporaneous physician's opinion, we will not consider it as probative at all. Yes, then that would be incorrect. Okay, then let's take the next part. Let's build on Judge Chen's question, and that is if the board relied solely on the fact that the articles or treatises did not mention him and his condition, or his specific condition, and they underlined the word his condition specifically, that somehow that renders them not probative. Would that also be an incorrect statement of the law? No, Your Honor, because I think, and I think it's very important to look at what the board was actually saying here, and what the Veterans Court was saying, was that there was a, it was too general in nature, and it was not specific to his actual condition. The medical treatise would have to mention Melvin O'Hara by name? No, Your Honor. No, and I don't understand. Okay, I think it's very helpful to look at a few of the cases where, again, it was in the context of whether there was a well-grounded claim, so it was whether a duty to assist had been triggered. But I think it's very illustrative to look at prior cases where the Federal Circuit and the Veterans Court have said, no, there was error here. This needed to have been, this treatise evidence, or secondary medical literature evidence, needed to have been considered because it was specific enough to have been a prerogative. Your answer to Judge O'Malley's question, I mean, the answer, I assume, is no, they didn't have to name him or name his specifics. But what the board actually said was, it described it as being general, does not specifically discuss his kidney and urinary tract disorders. So I assume you would embrace that. You're saying they're not talking about him in particular, but I assume the government's decision is it is fair game to say you ought to be talking about the same disorders which he suffers from. That's correct, Your Honor, and not to go too far into fact plan because I do think this court does not have jurisdiction to actually go back and weigh the actual, how the prerogative value was weighed. But what we have here is two two-page internet printouts, one of which said that there was a condition called analgesic nephropathy that could have been linked to taking certain medications. I don't believe that's a condition that he was specifically even diagnosed with. The second two-page internet printout was entitled Toxicity Common Acetaminophen, which is the generic name for Tylenol, and that doesn't mention any kidney or renal issues whatsoever. And so this was a very, very, very general, and again, I think it's illustrative for this court to look. Hensley v. West in particular involved a veteran who had been subjected to mustard gas testing at a specific facility. What he had purported to produce as being a probative value to his claim was a specific VA report on certain medical conditions that veterans who had been present at that site and who had been subjected to that kind of testing were having. And there the court said, yes, this is specific enough to what we're talking about to be of probative value. Similarly – So this medical article does talk about damage to the kidneys or chronic kidney disease. That's not what Mr. O'Hara has here? Your Honor, he has a kidney disability, but I'm not – my understanding is that he was not specifically diagnosed with analgesic nephropathy. And so what we're talking about here is at a very high level of generality because we're talking about that somebody who takes Tylenol, large quantities of Tylenol for a large period of time, which is, as Your Honor knows, is one of the most commonly taken over-the-counter drugs in the world, can lead to severe kidney conditions. But it wasn't specifically mentioned anything he had been specifically diagnosed with, I don't believe. And so that's the basis for the board's decision in undermining the word his, is specifically saying, you know, we're not even talking about with a condition he has been specifically diagnosed with, and it hasn't tied into this. We're talking at a very high level of generality of Tylenol can lead to this kidney condition. That's very different than cases in the past like Hensley, like Walden v. West, where the actual medical literature slash treatise evidence that was produced by the veterans was very specifically targeted to a tie between a previous condition and what they were seeking disability for. So I'm just curious, why do you think the board talked about this seemingly legal proclamation that the submission of the medical article for it to be considered must be combined with the medical opinion? What do you think the board was driving at there? Well, Your Honor, that's not actually true. It's difficult for me to put myself in their shoes. I do think they may have been looking at the case of Sachs v. West, which was talking about the probative value to be assigned as not an absolute matter, but did say, this is not to say that medical article and treatise evidence are irrelevant and unimportant. They can provide important support when combined with an opinion of a medical professional. But I do think it's very important for this court to note that the opinion on appeal is the opinion of the Veterans Court, which affirmed the basis of the board's decision, not on the basis of that statement, but on the basis that the board had appropriately discounted, or properly discounted, was I believe the language they specifically used, the probative value of this internet research evidence because it was so general in nature and not because of the medical profession. It was not specifically tied to a relationship between a condition Mr. O'Hara had and the disability he was currently claiming for. So if the Veterans Court cleans up the board's mistakes, we're just supposed to assume that the board will never make those mistakes again? Well, Your Honor, there were two different grounds upon which the board discounted this probative value, and one of them, the Veterans Court found that one of them was a valid ground, did not reach the other ground, and so that's a valid ground for affirming the judgment of the Veterans Court. Okay, thank you. Your Honor, if there's no further questions, thank you. Your Honor, I seriously contest the government's characterization that when the board said his tradition, it meant generically his particular diagnosis. In order to come to that, you would have to ignore what the same judge advised the veteran during the hearing. And again, I have to repeat, it says, let me just explain, medical evidence that consists of treatise or medical text can't support a claim as far as nexus to the extent that it applies specifically to your case. So if there isn't any opinion that says, in your case, even if aspirin is known to cause, in some cases, kidney disease, we'd have to have a medical opinion that basically says so. So it's pretty clear what the BVA meant when it said his and how he treated evidence, that it had to be specific to that case, not to a generic condition. As far as the general diagnosis, it was a little unclear in the record what the doctor, upon which he mentions, referred to. And he said on page 113, although there is a condition referred to as analgesic nephropathy, where pain medication can be injurious to renal function, this is almost exclusively secondary to the use of NSAIDs, such as ibuprofen or naproxen, and not to narcotics and other things. So he's saying he could have it, but because the doctor mistakenly thought that he didn't have chronic use. And that's why I wanted to go into probative evidence, because I think effectively by saying that – by making the argument, the argument is essentially a harmless error argument. It's saying, okay, even if the analytical tool they used, saying that it had to be probative, like it could only be probative if it spoke the case, you're saying, well, it doesn't really matter because it didn't speak to the – his case didn't fit. The clear fact is if you look at pages 114 and 115, it says analgesic nephropathy involves damage within the internal structures of the kidney. It is caused by long-term use of analgesics, especially over-the-counter medications that contain veneticin or asimeticin. The doctor said it was just aspirin, and here is asimeticin. So that shows that the article is probative beyond what the doctor said. Your time is up, so you have a final thought. Okay, thank you. We thank both counsel when the case was submitted.